UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN BOHNE,<br><br>Plaintiff,<br><br>v.<br><br>COMPUTER ASSOCIATES INTERNATIONAL, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) C. A. NO.  04CV10068WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT COMPUTER ASSOCIATES INTERNATIONAL, INC.'S REPLY
MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

In opposing the motion for summary judgment of defendant Computer Associates

International, Inc. ("CA" or "the Company"), Plaintiff John Bohne ("Bohne") makes a multitude

of allegations that are largely irrelevant to his claims and unsupported by any evidence.  Further,

for the first time, Bohne purports to assert legal claims for whistle-blowing under the Sarbanes-

Oxley Act of 2002, 18 U.S.C. § 1514A ("Sarbanes-Oxley"), and violation of M.G.L. c. 149, §

148 for CA's alleged failure to pay wages and benefits at his termination, claims that are

noticeably absent from the Complaint.[1]  Bohne's newly raised legal claims, raised in an improper

fashion in an attempt to avoid summary judgment, lack merit and his efforts to defeat summary

judgment by creating factual disputes fail.  In the end, the material undisputed facts established

by competent evidence reveal that CA terminated Bohne's employment solely because he failed

---

[1] CA reserves its right to oppose any subsequently filed motion to amend and assert any
appropriate defenses to these newly asserted claims.  Bohne commenced this action in January
2004 and has never sought to amend the Complaint.  He should not be permitted to do so at this
late date, either through this improper vehicle or through a motion to amend.

to clearly and unambiguously provide important financial information about the terms of the

Allmerica Deal to CA. [2]

## ARGUMENT

**I.      Bohne's New Statutory Claims Would Not Survive Summary Judgment.**

**A.      Sarbanes-Oxley**

Sarbanes-Oxley provides, in pertinent part, that an employer may not discriminate against

an employee in the terms or conditions of employment because of lawful conduct by the

employee:

> (1) to provide information, cause information to be provided, or otherwise assist
> in an investigation regarding any conduct which the employee reasonably believes
> constitutes a violation of . . . any rule or regulation of the Securities and Exchange
> Commission, or any provision of Federal Law relating to fraud against
> shareholders, when the information or assistance is provided to . . . (C) a person
> with supervisory authority over the employee  . . . or

> (2) to file, cause to be filed, testify, participate in, or otherwise assist in a
> proceeding filed or about to be filed (with knowledge of the employer) relating to
> an alleged violation of . . . any rule or regulation of the Securities and Exchange
> Commission, or any provision of Federal Law relating to fraud against
> shareholders.

18 U.S.C. § 1514A(a).

While it is questionable whether the conduct Bohne alleges he engaged in constitutes

protected activity under the Sarbanes-Oxley whistle-blower provision, it is not even necessary to

address that issue.  Any claim by Bohne fails at the outset because he failed to file a complaint

with the Secretary of Labor within 90 days of CA's alleged violation.  18 U.S.C. 1514A(b)(2)

("action under paragraph (1) shall be commenced not later than 90 days after the date on which

the violation occurs").  CA terminated Bohne's employment in August 2002 – nearly three full

---

[2] Bohne offers no arguments addressing his claim for breach of the covenant of good faith and
fair dealing and concedes that his state law statutory whistle-blower claim fails.  Accordingly,
this Reply does not address those claims.

years before Bohne first "asserted" his alleged claim.  Given that as of this date, Bohne has yet to

file the prerequisite complaint with the Secretary of Labor, his Sarbanes-Oxley claim is time-

barred.  *Murray v. TXU Corp.*, 279 F. Supp. 2d 799, 802 (N.D. Texas 2003) (individual who

believes that he has been discriminated against in violation of statute "must first file a complaint

with the Secretary of Labor . . . within ninety days of alleged violation").

Nor is there any basis to conclude that Massachusetts courts would recognize the public

policy encompassed in Sarbanes-Oxley as one which forms the basis of a claim for termination

in violation of public policy under Massachusetts law.  In fact, Massachusetts law suggests the

contrary.  Massachusetts courts have consistently interpreted this exception to the at will

employment rule narrowly, finding that it provides redress to an employee for: (1) asserting a

legal right – e.g., filing a worker's compensation claim, (2) doing what the law requires – e.g.,

serving on a jury, or (3) refusing to do that which the law forbids – e.g., committing perjury.  *See*

CA's Memorandum in Support of Its Motion for Summary Judgment ("CA's Memo"), at p. 12.

The public policy exception does not protect all employee acts that are "appropriate [or] socially

desirable," nor does it encompass all employee acts "that are directed to illegal, unsafe, or

unethical conduct."  Acher v. Fujitsu Network Communications, Inc., 354 F. Supp. 2d 26, 29 (D.

Mass. 2005).  In short, Sarbanes-Oxley does not provide a legal basis for Bohne's "whistle-

blower" claim and summary judgment is warranted for the reasons set forth more fully in CA's

Memo.

**B.      M.G.L. c. 149, § 148**

Bohne asserts that CA violated M.G.L. c. 149, § 148 "by not providing the Plaintiff with

wages and accrued benefits at the time of the termination."  The Plaintiff's Response to

Defendant Computer Associates Memorandum in Support of Its Motion for Summary Judgment

("Plaintiff's Response"), p. 3.  However, this alleged claim would fail because Bohne failed to

exhaust his administrative remedies.  Pursuant to M.G.L. c. 149, § 150, an individual may not

pursue a private action for a violation of § 148 unless he filed a complaint with the

Massachusetts Attorney General ("AG") and received the AG's assent, in writing, to pursue a

civil action within three years of the alleged violation.[3]  Given his failure to file a complaint with

the AG in a timely manner before bringing this action, any claim under §148 is barred.

## II.    Bohne's Unsupported Factual Assertions and Tortured Arguments Do Not Save His Whistle-Blower and Discrimination Claims.

While Bohne offers many arguments for why this Court should not grant summary

judgment on his claims relating to his termination, they generally focus on two themes: first, that

CA should not have terminated his employment because the Company should have been able to

figure out the terms of the deal he negotiated with Allmerica, and, second, that misconduct by

CA's senior executives supports the conclusion that CA terminated his employment in order to

hide their misconduct.  Review of these arguments reveals that they do not undercut or refute the

overwhelming, and more importantly, unrefuted, evidence that CA terminated Bohne's

employment solely for the reason it has stated – Bohne, as a Sales Executive, was obligated to

provide the Company with clear and unambiguous information about the terms of any deal he

proposed and failed to do so in connection with the Allmerica Deal to CA's financial detriment.

Moreover, none of Bohne's assertions establish that CA's decision was motivated by age

discrimination or some other improper purpose.

---

[3] M.G.L. c. 149, § 150 provides in pertinent part:

> Any employee claiming to be aggrieved by a violation of section 148 . . may, at
> the expiration of ninety days after the filing of a complaint with the attorney
> general, or sooner, if the attorney general assents in writing, and within three
> years of such violation, institute and prosecute . . . a civil action . . ..

### A.     Misconduct By CA's Senior Executives Is Irrelevant.

In a futile attempt to save his "whistle blower" claim and place his activity within the

protections of Sarbanes-Oxley, Bohne suggests that CA was obligated to report the over booking

of the Allmerica Deal in an SEC filing and contends that the "involvement" in the decision to

terminate his employment of Sanjay Kumar and Stephen Richards, who have since been indicted

for, among other things, securities violations, supports this claim.[4]  Plaintiff's Correction of

Material Facts in Support of Summary Judgment ("Plaintiff's Facts"), ¶¶ 34, 37; Plaintiff's

Response, pp. 6, 11.  Bohne contends that Richards and Kumar "did not want to expose

themselves to this type of scrutiny, knowing full well, that it could lead to the discovery of other

irregularities such as the back dating of agreements" and he contends that they terminated him to

cover up their own illegal activities.  Plaintiff's Response, pp. 6-7.  Bohne's conclusory

allegations, however, fail to establish any link between the misconduct of Kumar and Richards

and the decision to terminate his employment.  In particular, he does not allege that he reported

their misconduct and nothing about the misconduct Kumar and Richards engaged in suggests

that scrutiny of the Allmerica Deal would have increased the likelihood that their misdeeds

would have been discovered.  In fact, there are no facts that suggest that the Allmerica Deal was

---

[4] Bohne asserts that CA should have reported this overbooking of revenue to the SEC, but fails to
establish why, given the size of this error in comparison to CA's total revenue, this booking error
should have been reported.  *See* Plaintiff's Exhibit 11.

The criminal indictments of CA and these individuals arose out of the practice of holding
open CA's books at the end of each quarter in order to improperly record in that quarter, revenue
from contracts that were not executed until after the expiration of the quarter.  According to the
government, CA, which entered into a Deferred Prosecution Agreement to resolve the claims
against it, ceased this practice before 2002.  *See* Plaintiff's Exhibit 7.  While Bohne contends that
the Allmerica Deal was "back dated," that allegation is irrelevant because the alleged back dating
did not involve changing the quarter within which the deal the was booked since, as Bohne
points out, all the signatures were executed before the end of CA's fiscal quarter on March 31,
2002.  *See* Plaintiff's Response, p. 6, n.9.

in any manner related to Kumar's and Richard's illegal activities.  In short, Bohne fails to

establish any basis for concluding that Richards or Kumar viewed him as a whistle blower and

terminated his employment to protect themselves.

> **B.      Bohne's Allegations Do Not Support the Conclusion That CA's Articulated
>           Reason for Terminating Bohne's Employment Was False.**

Bohne argues that CA's staff had more than sufficient information to be able to determine

that he had agreed on CA's behalf that CA would assume the payments owed to the third party

finance company for the AION products, and that, therefore, its decision to terminate him could

not have been based on his failure to disclose adequately that component of the Allmerica Deal.

Bohne's argument fails, however, because his factual allegations, many of which are

unsupported by any evidence, show that, even if CA could have figured what he intended, he still

has not established a factual basis for concluding that CA terminated him in violation of public

policy or because of his age.  For instance,

- Bohne contends, without citing any evidence to support his claims, that CA should have
  known about the pre-committed payments because they would have been reflected in the
  prior licensing agreements which he claims to have submitted to GSO.  Plaintiff's Facts,
  ¶ 15.  He also makes the unsupported claim that only the payments on the AION product
  were owed to a third party finance company.  Plaintiff's Facts, ¶ 18.  Bohne's argument
  misses the point.  The relevant issue is not whether CA could have deciphered his
  proposal but whether it terminated his employment for an improper reason.

- Bohne contends that CA did not incur any financial obligation as a result of the Allmerica
  Deal and cites the fact that his commission statement reflected that the deal had a value of
  $1,442,043 rather than $1,800,000.  He also relies on this lower value to support his
  contention that CA did not commission him on the full value of the deal.  Plaintiff's Facts
  ¶¶ 22, 49.  Bohne's assertion ignores both the fact that $200,000 of the book value of the
  deal was transferred to Tom Alessi and his own admission that commissions are paid on
  the "present" value of a deal.  Plaintiff's Exhibit 3, page 044; Bohne Dep., 308.
  Moreover, CA did not allege that it commissioned him on the full value of the Allmerica
  Deal, but that it commissioned him on the portion of the deal that included the AION
  products, a fact that it established through documentary evidence that Bohne failed to
  refute.  Defendant's Statement of Facts, ¶¶ 53-54; Plaintiff's Facts, ¶¶ 53-54.

- Bohne claims that he proposed including four products in the Allmerica Deal that carried
  "pre-committed" payments.  He contends that Pilato requested that he remove two

products, Endevor and Intertest, and therefore, "[i]t was obvious that Pilato was aware of the Payment obligation of Allmerica." Plaintiff's Facts, ¶ 31; *see also Id.*, ¶¶ 18, 45. Not only does it not follow that removal of the two products meant Pilato knew CA was assuming payment obligations on behalf of Allmerica, but the record evidence refutes this claim because no version of the BARF included these products. *See* Defendant Exhibits 8, 10, and 12 (CA 1049-68).

- Bohne contends, without any documentary support, that the BARF he submitted on March 19, 2002 was a revised BARF. Plaintiff's Facts, ¶ 11. Not only is there no evidence to support this assertion, Bohne fails to articulate how this allegation supports his claims.

Some of Bohne's assertions actually support CA's claim that it was not clear to Pilato when she reviewed the BARF that Bohne was proposing that CA assume responsibility for pre-committed payments. For instance, Bohne concedes that he never took into account the assumption of the payment obligation in calculating the value of the Allmerica Deal:

- Contradicting his own deposition testimony, Bohne claims that it was not necessary for a Sales Executive to take into account and disclose terms that would decrease the net value of a deal. Plaintiff's Facts, ¶ 9; Bohne Dep. 40.

- Bohne contends that his Allmerica BARF showed that the <u>gross</u> value of the Allmerica deal was $1.8 million, despite the absence of any evidence to support his assertion that it was appropriate to provide gross rather than net value in disclosing the value of the deal to CA. Plaintiff's Facts, ¶ 15.

Bohne also points out that the Allmerica Deal Addendum, as drafted, did not require CA to assume its payment obligations. Plaintiff's Response, p. 6; Plaintiff's Facts, ¶ 19. Rather than supporting Bohne's claim, this fact shows that the individuals who reviewed the BARF and Addendum had no idea that Bohne was proposing that CA assume the payment obligation. The facts reflect that CA did not understand that Bohne had negotiated this term and once it realized he had, the Company felt obligated to stand by the deal as Bohne and Allmerica represented it had been negotiated and adjusted its books to reflect the deal accurately.

7

### C.      Bohne's Latest Allegations Fail to Support His Discrimination Claim.

Equally unavailing are Bohne's efforts to save his discrimination claim.  While he

continues to allege that, over the years, various of his managers treated him in a discriminatory

manner, he utterly fails to connect this alleged conduct to the decision to terminate his

employment.  He concedes that none of these former managers was involved in the decision to

terminate his employment, but simply asserts that, because they allegedly reported to Stephen

Richards (which they did not at the times of the alleged discriminatory conduct), they "would

have been acting on his instructions."  Plaintiff's Response, p. 10.  Nonetheless, he fails to

provide any evidence that suggests that Richards harbored any discriminatory animus.  Next, he

argues, again without the benefit of any evidentiary support, that CA was motivated to reduce

employment-related expenses which he contends are tied to age.  Plaintiff's Response, p. 10.

Even assuming the Court accepted Bohne's allegation that CA terminated his employment to

reduce expenses, that fact would not be sufficient to support a conclusion of age discrimination.

*Hazen Paper Co. v. Biggens*, 507 U.S. 604 (1993).  Plaintiff's baseless conclusory allegations,

unsupported by any evidence, cannot save his claim.

In short, Bohne's response, at most, creates a dispute of fact on an issue that is not

material to his claims – whether CA should have understood the terms of the deal he proposed.

That dispute, however, is insufficient to defeat summary judgment because the relevant inquiry

is whether the material facts support the conclusion that CA terminated his employment because

he was a whistle-blower or because of his age.  None do.

## CONCLUSION

For the foregoing reasons, Defendant CA respectfully requests that this Court grant it summary judgment on Plaintiff's complaint and dismiss this action with prejudice, with costs, attorneys fees and such other relief as is appropriate.

<div style="margin-left:40%">

Respectfully submitted,
DEFENDANT,
COMPUTER ASSOCIATES
INTERNATIONAL, INC.,
By its attorneys,

/s/ Brigitte Duffy_____
Brigitte Duffy (BBO # 565724)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:   (617) 946-4801

</div>

Date:  August 31, 2005

CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2005, the foregoing document was served upon Plaintiff *pro se,* John Bohne, 34 Kenmare Way, Rehoboth Beach, DE 19971, by forwarding a copy of same via FedExpress, overnight delivery, postage prepaid.

/s/ Brigitte Duffy__

9

BO1 15732778.1