# **Exhibit 1**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN P. BOHNE,<br>    **Plaintiff** | : | |
| | : | |
| | : | |
|     **v.** | : | **C.A. No.** |
| | : | |
| COMPUTER ASSOCIATES | : | |
| INTERNATIONAL, INC., | : | |
|     **Defendant** | : | |

## COMPLAINT

### I. Introduction

This is an action brought by the Plaintiff, John P. Bohne, against Defendant seeking declaratory and injunctive relief, attorney's fees and litigation expenses and other equitable relief, including back pay, as well as compensatory and punitive damages to remedy the unlawful discrimination in employment the Plaintiff has suffered on account of his age and for whistleblowing in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, et seq., the Massachusetts Fair Employment Practices Act ("FEPA"), M.G.L. c. 151B, §1 et seq., M.G.L. c. 149, §185, and common law.

### II. Parties

1.    The Plaintiff, John P. Bohne, is a resident of the Town of Hudson, County of Middlesex, Commonwealth of Massachusetts.

2.    The Defendant, Computer Associates International, Inc. ("CA") is a corporation duly organized and incorporated pursuant to the laws of the State of Delaware, with its principal place of business in Islandia, New York. Defendant is registered with the Commonwealth of Massachusetts to conduct business within this State and maintains an office location in Framingham, Massachusetts.

### III. Jurisdiction

3.     This Court has jurisdiction over the Plaintiff's claims under the ADEA pursuant to 29 U.S.C. §626 (c) and this Court has jurisdiction over the Plaintiff's FEPA, state statutory and common law claims pursuant to its supplemental jurisdiction under 28 U.S.C. §1367(a).

### IV. Venue

4.     Venue is proper in this Court in accordance with 29 U.S.C. §626(c), 28 U.S.C. §1391, and 42 U.S.C. §2000e-5(f)(3).

### V. Exhaustion of Administrative Remedies

5.     On or about December 30, 2002, the Plaintiff co-filed a charge alleging age discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Massachusetts Commission Against Discrimination ("MCAD").

6.     On or about January 8, 2004, the Plaintiff was issued a Notice of Right to Sue by the EEOC and has timely instituted suit thereon.

7.     On or about October 15, 2003, the Plaintiff was issued a Notice of Right to Sue by the MCAD and has timely instituted suit thereon.

8.     Plaintiff has satisfied all administrative and/or jurisdictional requirements to suit.

### VI. Allegations Common to All Causes of Action

9.     The Plaintiff is a sixty (60) year old male.

10.     On or about February 14, 1983, the Plaintiff was hired by Defendant as an Account Manager at Defendant's Framingham, Massachusetts office.

11.     Throughout his employment with Defendant, the Plaintiff was promoted to numerous positions, and was employed as a Sales Executive at the time of his termination on or about August 19, 2002.

12.    At all relevant times herein, the Plaintiff satisfactorily performed his job-related duties.[1]

13.    At the time of his termination on or about August 19, 2002, Juanita Cox, an Employee Relations Specialist at CA, stated to the Plaintiff that he was being terminated as a result of a corporation "rules violation," without more.

14.    The Plaintiff purported "rules violation," disclosed eight (8) months after his termination, was that he had "misled the Company about the terms of a sale he had negotiated," which in turn caused "CA to incur a financial obligation of which it was not aware to improperly inflate [the Plaintiff's] commission on that sale." (Def.'s MCAD Position Statement of April 25, 2003 at 1.)

15.    At the time of his discharge, the Plaintiff was owed significant sales commissions that Defendant was aware of and has refused to pay the Plaintiff the same.

16.    Defendant's aforesaid "rules violation" allegation is without merit and therefore pretextual.

17.    That at all relevant times herein, a pattern and/ or practice existed at Defendant wherein older employees were terminated and replaced by younger employees.

18.    Defendant discriminated against the Plaintiff in the terms and conditions of his employment, in whole or in part, on account of his age.

19.    On information and belief, after the Plaintiff was discharged from his position at CA he was replaced by another, younger employee.

---

[1] Mr. Bohne received Sales Leader Awards in July, 1983, July, 1984, December, 1984, October, 1986, and November, 1992. He received a first place award for OS/390 in October, 2000. He received Sales Manager Awards for Region of the Year in 1986 and 1988 and for Region of the Month in October, 1986. Mr. Bohne received Compass Club Awards in the following years: 1984-1990, 1994-95, 1997, and 2001.

3

20.    By terminating the Plaintiff and refusing to pay the Plaintiff outstanding commissions, Defendant has breached the covenant of good faith and fair dealing.

21.    Prior to his termination, the Plaintiff brought to the attention of Defendant's employees and/or agents certain improprieties regarding the manner in which Defendant "booked" a transaction between Defendant and Allmerica.

22.    The Plaintiff was terminated from his employment, in whole or in part, due to his comments regarding the "booking" of the transaction involving Allmerica.

23.    By terminating the Plaintiff, in whole or in part, for his comments regarding the "booking" of the transaction involving Allmerica and refusing to pay the Plaintiff outstanding commissions, Defendant retaliated against the Plaintiff for engaging in whistleblowing activities.

24.    The facts and circumstances regarding the Plaintiff's termination establish that his termination was, in whole or in part, in violation of public policy.

25.    Defendant's discriminatory actions and/or omissions are in violation of the ADEA, the FEPA, M.G.L. c. 149, §185 and common law and were motivated by malice and ill will toward the Plaintiff, and the Defendant's actions were taken with reckless and/or callous indifference to the statutorily protected rights of the Plaintiff and with the intent and purpose of depriving the Plaintiff of valuable compensation due to him.

26.    As a proximate result of Defendant's discriminatory acts and/or omissions, including but not limited to those described herein, the Plaintiff has suffered and will continue to suffer loss of income and other employment benefits, severe mental and physical anguish, pain and suffering, loss of enjoyment of life, and other great harm.

## VII.  Claims for Relief

27.    Plaintiff incorporates in the counts below the allegations contained in paragraphs 1-26 above.

### Count One
### 29 U.S.C. §621, et seq.

28.    By its acts and/or omissions, including but not limited to those described herein, Defendant discriminated against the Plaintiff by terminating his employment on the basis of his age, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the ADEA.

### Count Two
### Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, §1 et. seq.

29.    By its acts and/or omissions, including but not limited to those described herein, Defendant discriminated against the Plaintiff by terminating his employment on the basis of his age, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the FEPA.

### Count Three
### M.G.L. c. 149, §185

30.    By its acts and/or omissions, including but not limited to those described herein, Defendant retaliated against the Plaintiff by refusing to pay him outstanding compensation due to him and terminating his employment for engaging in whistleblowing activity, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under M.G.L. c. 149, §185.

### Count Four
### Breach of Contract- Covenant of Good Faith and Fair Dealing

31.     By its acts and/or omissions, including but not limited to those described herein, Defendant breached the covenant of good faith and fair dealing, causing the Plaintiff to suffer damages as aforesaid.

### Count Five
### Breach of Contract- Public Policy

32.     By its acts and/or omissions, including but not limited to those described herein, Defendant violated public policy, causing the Plaintiff to suffer damages as aforesaid.

### VIII. Prayers for Relief

**WHEREFORE**, the Plaintiff respectfully prays that this Honorable Court enter judgment:

a.      Declaring the acts and practices complained of herein as being in violation of the Age Discrimination in Employment Act of 1967, the Massachusetts Fair Employment Practices Act and M.G.L. c. 149, §185.

b.      Directing Defendant to award Plaintiff front pay and benefits until he obtains a substantially equivalent position, and make him whole for all earnings he would have received but for Defendant's unlawful discriminatory treatment and breach of contract, including but not limited to, wages, outstanding commissions and employee benefits.

c.      Awarding the Plaintiff compensatory damages for future pecuniary losses, emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

d.      Awarding the Plaintiff punitive damages for the Defendant's intentional, malicious and/or reckless violation of the Age Discrimination in Employment Act of 1967 and the Massachusetts Fair Employment Practices Act.

6

e.    Awarding the Plaintiff damages pursuant to M.G.L. c. 149, §185(d).

f.    Awarding Plaintiff interest, reasonable attorney's fees, and costs.

g.    Granting such other and further relief as this Court deems just and proper.

## IX. Demand for Jury Trial

The Plaintiff hereby demands a trial by jury.

## X. Designation of Trial Counsel

The Plaintiff hereby designates Louise A. Herman, Esquire, as trial counsel.

PLAINTIFF
By his attorneys,
SINAPI, FORMISANO & COMPANY, LTD.

Louise A. Herman (#548995)
100 Midway Place, Suite 1
Cranston, RI 02920-5707
(401) 944-9690
(401) 943-9040 (facsimile)

Dated:  January 8, 2004

7

# **Exhibit 2**

US Employee Handbook – Updated CA Insider Trading Policy

# 1. WELCOME TO COMPUTER ASSOCIATES *(page 3)*

Welcome Letter
Delivering Innovative Solutions
The Six Brands
Employee Handbook
Policy on Equal Employment Opportunity (EEO)
Policy on Unlawful Harassment

# 2. POLICIES AND GUIDELINES *(page 8)*

Classification
Employment with CA
Date of Hire
Required Immigration Information
Employment Records
Promotions/Transfers
Work Rules
Workplace Violence Policy
Drug Free Workplace
Employee Assistance Program
Smoking Policy
Attendance and Reliability
Appearance
Garnishments
Solicitations and Distributions
Posting Notices
Safety Awareness
Work Related Injuries
Computer Systems' Security
Use of E-Mail, the Internet and the Intranet
Intellectual Property Implications of the Use of CA's Info Systems
E-mail Content and Destruction
Insider Trading and Stock Tipping
Authorized Employment-Related Expenses
        Business and Travel
        Relocation
The PeopleCall Center

# 3. COMPENSATION *(page 24)*

Salary and Performance Evaluation
Pay Schedule and Method
Overtime Pay
Special Compensation Matters
        Holidays
        Breaks

CA 0937

US Employee Handbook – Updated CA Insider Trading Policy

## Severance

**Purpose**

The purpose of the CA Severance Pay Plan (the "Plan") is to provide, within the sole discretion of the Plan Administrator, severance benefits to certain employees of Computer Associates International, Inc. (the "Company") who lose their positions with the Company involuntarily and only under certain circumstances.

It has been and continues to be the Company's view that the purpose of the Plan is to provide eligible employees with a measure of financial protection to help ease their financial burdens while seeking new employment in the event their employment with the Company is terminated.

**Eligibility and Benefits**

**A.** "Employee" for purposes of this Plan shall mean a regular, full–time employee of the Company working in excess of thirty (30) hours per week and classified as an "employee" on the payroll records of the Company, but excluding any self-employed individual within the meaning of Section 401(c)(1) of the Internal Revenue Code, any individual who is not a resident of the United States and any person performing services for the Company pursuant to an agreement between the Company and a third party leasing or professional employment organization, staffing firm or similar third party organization. Individuals not classified as employees on the payroll records of the Company for a particular period shall not be considered employees for purposes of the Plan for such period even if a court or administrative agency subsequently determines that such individuals were common law employees of the Company during such period.

**B.** An employee may be eligible for benefits under the Plan if the Company involuntarily terminates the employee's employment, unless:

    1.    the termination of the employee's employment is due to a change in operations, a facility relocation or closing, or a reduction for other economic reasons, and the employee refused or otherwise failed to accept another position that may be available with the Company (unless in connection with such position the employee is requested to and the employee would be physically required to relocate his or her residence to another location); or

    2.    the termination of the employee's employment is the result of a sale, a merger of all or part of the Company's business or assets, an acquisition, or another form of corporate reorganization, and the employee is offered employment by the acquiring or resulting company; or

    3.    the termination of the employee's employment is the result of:

        (i)    the employee's resignation;

        (ii)    the employee engaging in any of the following prohibited activities:  (1) dishonesty, including theft; (2) insubordination; (3) job abandonment; (4) willful refusal to perform the employee's job; (5) violation of the terms of the Company's Employment and Confidentiality Agreement; (6) violation of the Company's policies on discrimination, unlawful harassment or substance abuse; (7) violation of the Company's Work Rules, (8) violation of the Company's Workplace Violence Policy; and, (9) excessive absenteeism.  The determination of whether an employee has engaged in any of the

CA 0976

US Employee Handbook – Updated CA Insider Trading Policy

prohibited activities enumerated herein shall be in the sole discretion of the Plan Administrator;

    (iii)    the employee's death;

    (iv)    the employee's failure and/or inability to return to work following an approved leave of absence;

4.    The employee has been employed by the Company for less than three (3) months; or

5.    The employee is a member of a collective bargaining unit covered by a collective bargaining agreement between the Company and a labor organization where severance benefits have been the subject of good faith bargaining, unless participation in the Plan is expressly provided for in the collective bargaining agreement.

**C. (i)** Employees who are determined in accordance with paragraph (B) to be eligible to receive benefits under the Plan will receive an amount equal to two (2) weeks of their Base Salary for each full year of continuous service with the Company (the "Separation Payment"). The minimum Separation Payment provided to an eligible employee will be equal to two (2) weeks Base Salary; the maximum Separation Payment will be equal to twenty–six (26) weeks Base Salary, regardless of length of service. The Plan does not provide any Separation Payment for any employee who has been employed by the Company for less than three (3) months. Any eligible employee who has been employed by the Company for more than three months but less than one (1) full year will receive the minimum Separation Payment offered under the Plan.

**(ii)** In addition to the benefit described in Section C(i) above, employees who are determined in accordance with paragraph (B) to be eligible to receive benefits under the Plan and who are enrolled for coverage under a Company sponsored medical insurance plan on the their employment termination date will also receive a COBRA Assistance Payment. The amount of the COBRA Assistance Payment will be equal to the cost of either two (2) or three (3) months of premiums for COBRA continuation coverage under the Company sponsored medical insurance plan in which the employee is enrolled. If the employee is enrolled in the Company self-funded Preferred Provider Organization Plan on the date of employment termination, the COBRA Assistance Payment will be equal to the cost of two (2) months of premiums for COBRA continuation coverage under that Plan. If the employee is enrolled in a Health Maintenance Organization Plan, Point of Service Plan, or Indemnity Plan on the date of employment termination, the COBRA Assistance Payment will be equal to the cost of three (3) months of premiums for COBRA continuation coverage under the applicable plan. The amount of the COBRA Assistance Payment made under this section (ii) will correspond with the then in effect applicable monthly COBRA premium (multiplied by two or three) for the medical insurance coverage under which the employee is enrolled on the date of employment termination. The Plan does not provide a COBRA Assistance Payment to any employee who has been employed by the Company for less than (3) months.

**D.** In certain severance situations (such as in connection with a plant or facility closing or mass layoff as defined and covered under federal, state or local law), after the Company informs employees that the Company will terminate their employment, some employees may be retained on active payroll status for a period of time, but not be required to come to work, pending their official termination date (the "Payroll Continuation Period"). During any Payroll Continuation Period, affected employees will be free to seek and accept other employment. Benefits payable under the Plan may be reduced, in the sole discretion of the Plan Administrator, by any voluntary payments made to affected employees during the Payroll Continuation Period, in accordance with paragraph (E) below.

CA 0977

US Employee Handbook – Updated CA Insider Trading Policy

E.    **(i)**  Employees entitled to receive benefits in connection with a plant or facility closing or a mass layoff as defined and covered by any federal, state or local law, as referred to in (D) above, or those who have received such benefits because they have been considered by the Company as being covered by such law or laws, will be eligible to receive, in addition to the notice required under such law or laws, or the wages or salary required to be paid under such law or laws in lieu of notice, or any combination thereof, the benefits described in (C) above.

**(ii)**  Notwithstanding the foregoing, the Plan Administrator, in its sole discretion, may reduce the benefits payable to an employee under the Plan by an amount equal to: (1) any salary paid by the Company to the employee during a Payroll Continuation Period; (2) any other amounts paid by the Company to the employee that are not otherwise required by law; and, (3) any amount paid by the Company to the Employee in connection with a plant or facility closing or mass layoff as defined and covered under any federal, state or local law.

**(iii)**  In all instances, an employee eligible for severance benefits under this Plan shall not receive from the Company an amount in excess of twenty-six (26) weeks of the employee's Base Salary combined between (1) benefits payable under the Plan; (2) any salary paid by the Company to the employee during a Payroll Continuation Period; (3) any other amounts paid by the Company to the employee that are not otherwise required by law; and, (4) any amount paid by the Company to the Employee in connection with a plant or facility closing or mass layoff as defined and covered under any federal, state or local law.

F.  The Separation Payment to which an employee is eligible will be based on the employee's Base Salary in effect at the time the employee is notified of the termination of his or her employment. For purposes of this Plan, the term Base Salary excludes benefits, commissions, draws, bonuses of any kind, however defined, incentive payments, stock or option grants, differentials, overtime, special allowances, or any other remuneration (cash or otherwise). In addition, any performance or merit reviews that are pending or in progress will not be considered as Base Salary for the purpose of determining the amount of an employee's Separation Payment under this Plan.

G.  In order to receive severance benefits under this Plan, each eligible employee must sign a severance, release, and non-competition agreement in a form acceptable to the Company.

H.  In no event will an employee be entitled to benefits both under this Plan and any other severance plan.

## Method of Payment

Subject to an employee's compliance with the terms of this Plan, in most situations the employee will receive severance benefits paid in connection with this Plan in a single lump-sum payment, coincident with the Company's then current payroll cycle. All coverage and participation in the Company's benefit programs will terminate on the employee's employment termination date, unless otherwise required by law, except for employees that participate in the Computer Associates International, Inc. self funded Preferred Provider Organization Group Medical Plan. Coverage for employees who participate in the PPO will normally continue for a period of thirty (30) days from the employee's employment termination date. Employees will receive information concerning insurance coverage continuation under COBRA in accordance with governing law.

CA 0978

US Employee Handbook – Updated CA Insider Trading Policy

**Source of Benefit**

The Company will pay benefits under the Plan from its general assets to the extent available. No employee shall have any right to, or interest in, any assets of the Company upon termination of employment or otherwise, except as provided from time to time under this Plan, and then only to the extent of the benefits payable under the Plan to such employee.

**Review of Denial of Benefits**

**A.** If an employee believes he or she should have received a benefit or additional benefits under the Plan, the employee must file a claim with the Plan Administrator (the Company's Senior Vice President, Human Resources) within ninety (90) days of the date on which the employee's employment terminated. Within ninety (90) days after receiving a claim, the Plan Administrator will:

    1.   either accept or deny the claim completely or partially, and

    2.   notify the employee of acceptance or denial of the claim.

**B.** If the claim is completely or partially denied, the Plan Administrator will furnish a written notice to the employee containing the following information:

    1.   specific reasons for the denial;

    2.   specific references to the Plan provisions on which any denial is based;

    3.   a description of any additional material or information that must be provided by the participant in order to support the claim; and

    4.   an explanation of the Plan's appeal procedures.

**C.** The employee may appeal the denial of his or her claim and have the Plan Administrator reconsider the decision. The employee or his or her authorized representative has the right to:

    1.   request an appeal by written request to the Plan Administrator not later than sixty (60) days after receipt of notice from the Plan Administrator denying his or her claim;

    2.   review pertinent Plan documents; and

    3.   submit issues and comments regarding the claim in writing.

**D.** The Plan Administrator will make a decision with respect to such an appeal within sixty (60) days after receiving the written request for such appeal and will notify the claimant of the reason for the decision and make specific references to the Plan's provisions upon which the decision on the appeal is based. If the Plan Administrator does not provide the employee with written notice of the denial of his or her appeal within the 60–day period, the employee's claim shall be deemed denied. The 60–day periods may be extended according to law.

**Amendment or Termination of the Plan**

The Plan may be amended or terminated for any reason and at any time by the Plan Administrator or by the appropriate officer of the Company, with or without advance notice; provided, however, that any such amendment or termination shall not adversely affect any right to benefits arising prior to the effective date

CA 0979

US Employee Handbook – Updated CA Insider Trading Policy

of such amendment or termination, nor shall any amendment cause benefits paid under the Plan to violate any applicable provision of ERISA or the Code

**No Guarantee of Employment**

Nothing contained in this Plan shall confer on any employee any rights of continued employment with the Company or otherwise alter any employee's status as an at-will employee.

**Employees' Rights Under ERISA**

As a Plan participant, employees are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974, as amended (ERISA). ERISA provides that all participants are entitled to examine, without charge, at the Plan Administrator's office and/or at any other specified locations such as work sites, all Plan documents and copies of all documents filed by the Company with the U.S. Department of Labor. Employees may also obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator. A reasonable charge to cover copying costs may be made.

Under ERISA, there are steps employees can take to enforce their rights as a participant. For instance, if an employee requests materials from the Plan Administrator and does not receive them within thirty (30) days, the employee may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If an employee has a claim for benefits that is denied or ignored, in whole or in part, the employee may file suit in a state or federal court.

If it should happen that Plan fiduciaries misuse the Plan's assets, or if an employee is discriminated against for asserting his or her rights, the employee may seek assistance from the U.S. Department of Labor, or the employee may file suit in a federal court. The court will decide who should pay court costs and legal fees. If the employee is successful, the court may order the person the employee has sued to pay these costs and fees. If the employee loses, the court may order the employee to pay these costs, for example, if it finds the employee's claim is frivolous.

If employees have any questions about their rights under ERISA, employees should contact the nearest Area Office of the U.S. Labor–Management Services Administration, Department of Labor.

**Plan Administrator**

The Company's Senior Vice President, Human Resources, is the Plan Administrator appointed by the Chief Executive Officer of the Company. The Plan Administrator makes the rules and regulations necessary to administer the Plan. The Plan Administrator has the responsibility and the absolute discretionary authority to interpret the terms and provisions of the Plan, to determine eligibility for benefits under the Plan, and to determine the amount of such benefits. The interpretations and determinations of the Plan Administrator are final and binding unless determined by a court of competent jurisdiction to be arbitrary and capricious.

**Type of Plan**

The Plan is a severance pay plan.

**Agent for Legal Process**

Last update 8/1/02

44

CA 0980

US Employee Handbook – Updated CA Insider Trading Policy

The Company's Senior Vice President and General Counsel is the agent for service of legal process. Any communications should be sent to the Senior Vice President and General Counsel of the Company.

Legal process may also be served on the Plan Administrator at the following address:

> Computer Associates International, Inc.
> One Computer Associates Plaza
> Islandia, New York 11749–7000

**Plan Year**

The records of the Plan are kept on a fiscal year, April 1 – March 31.

**Identification Number**

If employees wish to discuss the Plan with a federal government agency, the employee may need the following numbers: Plan Number 504. The Company's Employer Identification Number is 13–2857434.

### Education/Training Reimbursement

CA seeks employees who are motivated and have the desire to grow and continue to learn. Therefore, we encourage employees to continue to enhance their skills in an effort to make them even greater assets to the company's growth and expansion.

All Regular employees who have been employed for a period of **(3) three months** or more are eligible for tuition reimbursement. In all cases, you must submit a Tuition Reimbursement Approval Form to your **local Human Resources Representative** for prior approval. **Please note**: Training courses resulting in a specialized certification (i.e. Microsoft, CNE, etc.), or other specialized product training sessions (including courses, conferences and technical seminars) must be submitted as a business expense through your manager not through the Tuition Reimbursement Program.

The following are the criteria for approval and reimbursement:

1. Employee must have completed three months of service prior to the start of the course(s).

2. Any course submitted for approval must be for either an undergraduate or graduate degree from an accredited college or university, must be job-related and must enhance your skills in your existing position at CA.

3. Reimbursement is contingent upon continued employment with the Company, whether you have completed the course or not.

4. A full description of the course or program must be submitted to your **local HR Representative** prior to enrollment.

5. Reimbursement is limited to two courses per term or semester.

6. A grade of B or better is required in order to be eligible for reimbursement of tuition expenses.

Last update 8/1/02

45

CA 0981

# Exhibit 3

# Five Year Earnings History

| Calendar Year | 2002 | 2001 | 2000 | 1999 | 1998 |
|---|---|---|---|---|---|
| | To August | | | | |
| Salary | $49,583.00 | $85,000.00 | $85,000.00 | $80,000.00 | $80,000.00 |
| Commissions Paid | $56,614.00 | $21,186.00 | $291,006.00 | $47,887.00 | $57,824.00 |
| Total Compensation | $106,197.00 | $106,186.00 | $376,006.00 | $127,887.00 | $137,824.00 |

Commissions Due for National Grid    $193,883.00

| Five year Average Does not include National Grid | Five year Average Includes National Grid | Total Damages due for Improper Termination |
|---|---|---|
| $170,820.00 | $209,596.60 | 5.33 Years $1,117,149.88 |

Health Insurance
$86,208.00

Current Commissions Due
$193,883.00

Commissions Due from Prior Transactions
$75,000.00

Interest Due on $$$ Owed
$71,771.94

$1,457,804.82

Damages for hardship and loss of reputation
$728,902.41

Total
$2,186,707.23

# **Exhibit 4**

362

1    asked me questions on it, yes, and of course I

2    denied having any part in it, but the circumstances

3    talk to themselves.  I was a party of a bunch of

4    people that were fired.

5        Q.  Hadn't they all been fired before you?

6        A.  I was the last to be terminated, to the best

7    of my knowledge, of the group.  There were 3 people

8    that were terminated the same day as I was.

9        Q.  Oh, really.

10       A.  I believe 2.  That's correct.

11       Q.  Who?

12       A.  I believe Amy Williams.  In fact I'm almost

13   positive Amy was terminated that day, and one other

14   girl, one other woman.  There were 3 people

15   terminated, I believe, the day I was terminated.

16       Q.  Are you seeking damages for emotional

17   distress?

18       A.  I believe that's included in what I consider

19   to be the damages that -- you know, for reputation.

20   There certainly was a certain amount of money --

21       Q.  In that seven hundred and something odd

22   thousand dollars that includes --

23       A.  There is no breakdown of that, by the way. I

24   think we went through that before.