United States District Court
District of Massachusetts

| | |
|---|---|
| John P. Bohne,<br>        Plaintiff,<br><br>v.<br><br>Computer Associates<br>International, Inc.,<br>        Defendant. | C.A. No.04CV10068WGY |

**PLAINTIFF JOHN P. BOHNE'S SURREPLY TO DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION IN LIMINE**

As Plaintiff, Pro Se, I respectfully wish to correct certain information in the Defendant, Computer Associates International, Inc.'s reply to the Memorandum in further support of its Motion in Limine. In the Plaintiff's initial Reply to the Defendant's Motion Limine, the Plaintiff withdrew all claims for Defamation of Character at this time. Any remaining claims are available because of the Defendant's Breach of Contract – Covenant of Good Faith and Fair Dealing and not because of the added claim for Defamation of Character. As for any claim for Severance, this claim, as was previously argued, is not new but is consistent with the principles affirmed in Fortune v. National Cash Register Company, 364 N.E.2d 1251 (1997). As was stated there, Severance is not a "Damage Award" but compensation for past services. Finally, there was never any claim of Defamation of Character referencing the Uniform Commercial Code. What was claimed were damages for Breach of Contract-Good Faith and Fair Dealing, which was

1

available through common law remedies, as affirmed by the Commonwealth of Massachusetts when it adopted its version of the Universal Commercial Code.

# ARGUMENT

### I.   Plaintiff's claim for Severance should be allowed.

The Defendant has continually argued that the Severance Plan would not apply due to the fact that any severance would be contingent on the execution of a severance, release, and non-competition agreement. This provision conveniently excludes anyone who would seek legal recourses to recover Salary, Benefits and other compensation that is illegally withheld by the Defendant. Clearly, this is again the same principle that was addressed by Fortune. Furthermore, the Defendant continues to argue, that even if the former were satisfied, the Defendant would deny any claim. This response clearly provides the type of evidence that appeared to be lacking in the Plaintiff's argument to support its claim in Count One and Count Two of the initial action. The very fact that the Defendant states the they would withhold Severance Benefits to an Employee that has 19 years of service and is 59 years old while offering those benefits to a younger, less tenured employee, would reiterate the fact that this policy, and the Defendant themselves, are in violation of the law.

### II.   Defendant Did Not Provide Plaintiff With Written Notice Of Termination.

The Defendant mistakenly argues that no written notice was necessary to effect a termination. Here, the Defendant, as has occurred many times during the course of

this action, fails to understand the nature and meaning of the terms a contract. An agreement that is executed by both parties cannot and should not be ignored. Here the Defendant introduced the **Computer Associates International. Inc. Employment and Confidentiality Agreement** in its motion to request that certain information related to this action be kept Confidential (refer to Docket 30, Exhibit 1) but fails to acknowledge its existence as an Employment Agreement. This agreement provides for a method of delivery of notices due under the agreement in its Paragraph 18 § (b) which reads in part as follows: "Any notice required or permitted to be given under this Agreement shall be made either (i) by personal delivery to Employee …….. (ii) in writing and sent by registered mail, postage prepaid, to the Employees residence……". Clearly, a Notice of Termination would be one of those notices and no written notice of a Termination was ever delivered to, or received by the Plaintiff.

III.     **The Uniform Commercial Code and Common Law Contract enforcement has been applied to Breach of Contract-Covenant of Good Faith and Fair Dealing.**

Again, the Defendant has mistakenly interpreted my reply. The Uniform Commercial Code and its Commonwealth of Massachusetts adaptation of its guidelines, simplified the interpretation of Contract Law, as it existed in Common Law. Damages for Breach of Contract, specifically, Breach of Contract-Covenant of Good Faith and Fair Dealing, have been applied to all forms of Agreements. For

purposes of illustrating this point, I will quote an article that was available on the Internet[1].

*"In each contract, there is an implied covenant of good faith and fair dealing. The purpose of the implied covenant is to allow for the terms of contracts to be interpreted fairly. Consequently, what constitutes a breach of the covenant depends on the particular terms of the contract. If A contracts with B to perform when the clock strikes at noon, the implied covenant of good faith would impose liability if A destroyed the clock to avoid having to meet the precise terms of the contract.*

*While the covenant is in essence an implied contract term, occasionally courts have held that the breach of the implied covenant of good faith and fair dealing can also constitute a tort. This allows for tort damages as well as contract damages. Tort damages can include, in addition to consequential economic loss, mental distress and punitive damages, where malice is proven. Such tort damages can far exceed ordinary contract damages. While contract remedies recognize that a breach may in fact be economically efficient and are therefore not intended to be punitive, the extensive potential tort damages are a response to what is viewed, at the least, as a serious private wrong.*

*The tortious breach of the covenant of good faith and fair dealing is generally limited to breaches by insurance companies in particular contexts. An insurance company's bad faith refusal to pay the insured can exist when an insured has suffered a loss and the insurer, as a result, has greater leverage over its claimant. In these situations, the tort of breach of the covenant of good faith and fair dealing provides an appropriate countermeasure against intentional efforts to deny or wrongfully reduce indemnification for a legitimate claim. Without the threat of mental distress and punitive damages available in the tort action, an insurance company could potentially intentionally stonewall a valid claim from its client, recognizing that litigation, if pursued by the claimant, could at worse compel the company to pay only what it had refused to pay initially under the insurance contract. However, there are concerns that the tort will subsume contract law's delicate effort to enforce contract expectations by excessively punishing defendants, deterring economically efficient contract breakers, or recklessly creating high stakes litigation."*

Although the Author claims that this principle applies to Insurance Companies, I present the argument that the Defendant has chosen the same path as those unscrupulous Insurance Companies, by choosing to Litigate rather than to pay legitimate claims for

---

[1] Taken from an article on the Internet published by John L. Diamond et al., *Understanding Torts* ' 19.03 (2000)

Compensation that were due the Plaintiff more that three years earlier. If this is allowed, the Defendant could continue its path of Litigation for other such claims when it deemed that the result on loss would be no worse than if it provided the legitimate compensation in the first place.

Respectfully Submitted

John P. Bohne
34 Kenmare Way
Rehoboth Beach, DE 19971
(302) 227-6405
(302) 448-0993 (mobile)

**Dated This Day:** DEC 27, 2005

To:

Brigitte M. Duffy, Esq.
Seyfarth Shaw
Two Seaport Lane, Suite 300
Boston, MA 02210

### CERTIFICATION

I herby certify that the foregoing Reply was served upon Defendant's counsel of record above, this day  12/27/05  via First Class Mail, Postage prepaid

5