UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN P. BOHNE, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) C. A. NO. 04CV10068WGY |
| COMPUTER ASSOCIATES INTERNATIONAL, INC., | ) ) ) ) |
| Defendant. | ) ) ) |

**DEFENDANT COMPUTER ASSOCIATES INTERNATIONAL, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT AS
A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**

Defendant Computer Associates International, Inc. ("CA") moves pursuant to Rule 50(b) of the Federal Rules of Civil Procedure for judgment as a matter of law or, in the alternative, for a new trial pursuant to Rule 59. As grounds for this motion, CA states that (1) no reasonable jury could return a verdict in favor of Plaintiff John Bohne ("Plaintiff") on his claim for breach of the covenant of good faith and fair dealing because the jury found that CA did not act in bad faith, and (2) the Court improperly instructed the jury about the law when it stated that CA's Fiscal Year 2003 Compensation Plan (the "Compensation Plan") could, as written, violate the covenant of good faith and fair dealing, regardless of whether CA acted in bad faith. For the reasons set forth below, CA requests that the Court grant its motion for judgment as a matter of law or, in the alternative, order a new trial.

**BACKGROUND**

The single claim put before the jury in this matter was whether CA breached the covenant of good faith and fair dealing by failing to pay Plaintiff a commission on a deal with National Grid signed in July 2002. The evidence at trial conclusively established that under CA's

Compensation Plan a terminated employee did not earn any commission on transactions that were not complete on the date of termination unless CA received payment from the customer within 30 days of the employee's termination. The evidence further established that CA terminated Plaintiff's employment on August 19, 2002 and that National Grid did not pay CA until more than 30 days after Plaintiff's termination. CA moved for a directed verdict both at the close of Plaintiff's case and at the close of all the evidence. The Court denied both motions.

During the charge conference, the Court stated that it would instruct the jury that it could find in Plaintiff's favor if it found (1) that CA had acted in bad faith when it terminated his employment, (2) that CA's Compensation Plan as drafted was so unfair as to violate the covenant of good faith and fair dealing, or (3) both. CA objected to this instruction both during the charge conference and after the Court charged the jury. The Court also drafted a special verdict form consistent with its instructions that required the jury to indicate, in the event it found in Plaintiff's favor, under which of these two theories it based its verdict. CA objected to the verdict form as well.[1] On January 19, 2006, the jury returned a verdict for Plaintiff, finding that CA did not act in bad faith, but that its procedures violated the covenant of good faith and fair dealing. (A copy of the jury verdict form is attached as Exhibit A).

## LEGAL ARGUMENT

**I.    CA Is Entitled To Judgment As A Matter Of Law.**

In deciding a motion for judgment as a matter of law, the trial court's task, taking into account all evidence in the light most favorable to the plaintiff, is to determine whether, without

---

[1] CA objected to the jury instructions and verdict form both with respect to the second theory for finding a breach of the covenant of good faith and fair dealing and with respect to certain of the Court's instructions with respect to the theory involving a finding of bad faith. Because the jury did not find bad faith, CA does not address its objections in that regard in this motion.

weighing the credibility of witnesses or otherwise considering the weight of the evidence, a jury reasonably could return a verdict for the plaintiff. Knowlton v. Deseret Medical, Inc., 1989 U.S. Dist. LEXIS 13590, *13 (D. Mass. Nov. 13, 1989); Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc., 753 F. Supp. 1007, 1010 (D. Mass. 1990).

### A. The Court's Instruction to the Jury on the Elements of a Claim for Breach of the Covenant of Good Faith and Fair Dealing Was Contrary to the Law.

The Court erred in instructing the jury that it could find that CA breached the covenant of good faith and fair dealing *even if* it did not terminate Plaintiff's employment in bad faith to deprive him of a commission. Specifically, the Court's jury verdict slip asked whether CA's "procedures," i.e., its written Compensation Plan, violated the covenant of good faith and fair dealing. In so doing, the Court departed from and significantly extended the covenant of fair dealing as applied in the context of at-will employment beyond its logical bounds and invaded the parties' rights to contract. Judgment should be entered in CA's favor because, as discussed below, the jury's finding that CA did **not** act in bad faith establishes that there was insufficient evidence as a matter of law to support a finding that CA breached the covenant of good faith and fair dealing.

According to Fortune v. National Cash Register Co., 373 Mass. 96, 104-05 (1977), an employer may not terminate an at-will employee *for the purpose of* depriving the employee of compensation that the employee had already earned and which, with the mere passage of time, would have become payable. Michelson v. Digital Financial Services, 167 F.3d 715, 725 (1st Cir. 1999). The Supreme Judicial Court ("SJC") held that the defendant's "written contract contains an implied covenant of good faith and fair dealing, and a termination not made in good faith constitutes a breach of the contract." Fortune, 373 Mass. at 101. In Gram v. Liberty Mut. Ins. Co., 384 Mass. 659 (1981), the SJC expanded Fortune "to impose liability on an employer

- 3 -

BO1 15758700.1

who terminated an employee without good cause and for the purpose of appropriating the employee's commissions that were 'reasonably ascertainable future compensation based on his past services.'" Michelson v. Digital Financial Services, 167 F.3d 715, 725 (1st Cir. 1999); see also Sargent v. Tenaska, Inc., 108 F.3d 5, 8 (1st Cir. 1997) ("One condition is that the discharge have been done in bad faith; another, put generally, is that the interest or claim pertains to 'past' services, i.e., to services already performed at the time of the discharge"); Devlin v. WSI Corp., 833 F. Supp. 69, 77 (D. Mass. 1993) (finding that "the holding in Fortune . . . requires something more than bad faith. The employer must seek to deprive the . . . employee of money fairly earned and legitimately expected"); Trent Partners & Assocs. v. Digital Equip. Corp., 120 F. Supp. 2d 84, 101 (D. Mass. 1999) ("The implied covenant of good faith and fair dealing provides protection to employees-at-will in situations where the purpose of the termination was to deprive the employee of an identifiable, future benefit due for particular past service"); Mullowney v. Data General Corp., 143 F.3d 1081, 1083 (7th Cir. 1998) ("Massachusetts courts find violations of the implied duty of good faith only when there is some allegation of bad faith on the part of the defendant"); see also Scott C. Moriearty, et al., 45 Massachusetts Practice, Employment Law, § 3.2 (2d ed. West 2003) (the Fortune doctrine "is applicable only if the employee's termination is either not for 'good cause' or is in 'bad faith'"). Thus, to succeed on his claim, Plaintiff was required to prove that CA "terminated him without good cause *and* in bad faith *in order to* deprive him of commissions that have already been earned or were reasonably ascertainable based on past services." Michelson, 167 F.3d at 726 (emphasis added).

The Court did not instruct the jury that Plaintiff had to prove that CA (1) discharged him *without good cause and in bad faith* (2) *in order to* deprive him of commissions he already earned. Rather, the Court said that CA could have breached the covenant of good faith and fair

- 4 -

dealing (1) by terminating Plaintiff's employment in bad faith *or* (2) by the terms of its Compensation Plan. The Court then crafted a jury verdict slip that reflected these two separate theories of liability. The Court's second alternative allowed the jury to find a breach of the covenant of good faith and fair dealing without finding that the Plaintiff proved the critical elements of his claim: (1) that CA discharged Plaintiff without cause and in bad faith, (2) to deprive him from collecting commissions.

In instructing the jury after the close of evidence, the Court improperly expanded the Fortune doctrine. "Fortune liability does not encompass situations where the employee merely was fired arbitrarily . . . [rather] the plaintiff must demonstrate that his discharge was 'contrived to despoil [him] of earned commission or similar compensation due for past services.'" Coll v. PB Diagnostic Sys., 50 F.3d 1115 (1st Cir. 1995) (citing Biggins v. Hazen Paper Co., 953 F.2d 1405, 1416 (1st Cir. 1992)). Accordingly, in an at-will employment contract, a breach of the covenant of good faith and fair dealing not only requires an element of intent on the part of the employer but also a wrongful discharge. Because the jury explicitly found that CA **did not** act in bad faith when it terminated Plaintiff's employment, its finding that the Company's Compensation Plan as written violated the covenant of good faith and fair dealing is contrary to Massachusetts law.

Moreover, realizing that bad faith is an essential element of the claim, the Court essentially instructed the jury that it could find bad faith in CA's decision to discharge Plaintiff or in its written Compensation Plan. There is nothing in Fortune, Gram, or their progeny that allows for finding a breach of the covenant of good faith and fair dealing based on termination in the absence of an actual finding of bad faith and an intent to deprive the plaintiff of a compensation. The Court's instruction to the jury and jury verdict slip went beyond the law and,

therefore, the Court should correct this error and grant CA's motion for judgment as a matter of law or, in the alternative, for a new trial so that a jury may be properly instructed.

In a case that is directly on point, the Seventh Circuit applied Massachusetts law where the plaintiff filed a breach of contract action to recover unpaid commissions. Mullowney v. Data General Corp., 143 F.3d 1081, 1082 (7th Cir. 1998). (A copy of this decision is attached at Exhibit B). After his termination without cause, the plaintiff sought payment of commissions on a deal on which he had worked during his employment. The employer did not pay the commission in accordance with its written policy, which provided that an employee could only earn commissions on those products for which the employer had received payment in full from the customer. Id., at 1083. The Seventh Circuit affirmed the District Court's grant of summary judgment because the employer did not act in bad faith solely by refusing to pay commissions after the plaintiff's termination in accordance with the terms of its agreement with the plaintiff. Id., at 1084; see also Joyal v. Hasbro, Inc., 380 F.3d 14, 19 (1st Cir. 2004) (denying the plaintiff's claim for an unpaid bonus because the defendant employer did not act arbitrarily or with discriminatory animus when it discharged a 55-year-old employee who sought, among other things, to violate established company policy).

The SJC has dealt with this issue in Struck v. Plymouth Mortg. Co., 414 Mass. 118 (1993), in which the plaintiff, a residential mortgage officer, signed an agreement that set forth his commission rates and provided that no commissions would be paid on any loan originated or closed after an employee left the company for any reason. After the plaintiff voluntarily resigned his employment, the defendant applied the written terms of the agreement and refused to pay him commissions on any loans that were processed or closed after his termination. The Court acknowledged that it was not dealing with a Fortune case; rather, "[t]he question is whether, as a

matter of policy, this court will decline to enforce that provision in the compensation agreement which denies [the plaintiff] the right to commissions on future closings of loans that he had initiated." 414 Mass. at 121. The Court held that, based in part on the written employment agreement in that case, it was not unreasonable to enforce a forfeiture of future compensation for past services.

As in Mullowney and Struck, CA merely applied the operative Compensation Plan, which precluded Plaintiff from receiving commissions on the National Grid deal because National Grid did not pay CA until more than 30 days after Plaintiff's employment ended. The Compensation Plan does not allow CA to exercise any judgment or discretion as to when the invoice is paid. In other words, the Compensation Plan provides that an invoice must be paid within 30 days of an employee's termination in order for the employee to earn commissions. Plaintiff does not dispute that National Grid did not pay CA until more than 30 days after his employment ended on August 19, 2002; Plaintiff offered no evidence that CA had any influence over the date on which National Grid did pay its invoice. Because CA had absolutely no control over whether or when National Grid paid its invoice, it did not act in bad faith and, therefore, no reasonable jury could find that it breached the covenant of good faith and fair dealing.

      **B.**     **There Is no Legal Basis for the Court's Instruction That CA's Procedures Could Have Violated the Covenant of Good Faith and Fair Dealing.**

A party may breach the covenant of good faith and fair dealing implied in a contract through its performance of that contract; the contract itself, as written, cannot violate that covenant. The implied covenant of good faith and fair dealing ensures "that neither party shall *do* anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Druker v. Roland Wm. Jutras Associates, Inc., 370 Mass. 383,

385 (1976) (emphasis added); Fortune, 373 Mass. at 100-01.  In Christensen v. Kingston Sch. Comm., this Court recognized that:

> *Courts should not view the covenant [of good faith and fair dealing] as 'an unwarranted invitation . . . to impermissibly intrude into freedom of contract.'*  Nor should claims of a breach of the implied covenant of good faith and fair dealing become automatic bedfellows of breach of contract claims.  It has become common practice by plaintiffs bringing breach of contact claims automatically to pursue claims for breach of the covenant of good faith and fair dealing.  Often, these claims are frivolous, baseless, and perfunctory, and become unjustifiably entangled in legitimate breach of contract claims.  Conceptually, claims for breach of the implied covenant of good faith and fair dealing are distinct from simple breach of contract claims and require additional factual allegations of *unfairly leveraging the contract terms for undue economic advantage*.

Christensen, 360 F. Supp. 2d 212, 228-29 (D. Mass. 2005) (citations omitted) (emphasis added). Plaintiff did not introduce any evidence to show that CA attempted to deprive him of the fruits of the Compensation Plan, and it was improper for the Court to instruct the jury that the terms of the Plan itself could breach the covenant.

CA and Plaintiff have every right to determine and define, through their mutually agreed upon written Compensation Plan, when a commission becomes "earned."  An employer may "escape liability altogether by drafting a written compensation arrangement that clearly abrogates the employee's right to deferred compensation, including stock options, which, though grounded in past services, is not by the terms of the arrangement fully earned or payable as of the date of his termination."  Moriearty, et al., 45 Massachusetts Practice, Employment Law, § 3.2; see also Harrison v. NetCentric Corp., 433 Mass. 465, 476 (2001) (holding that, based on terms of stock agreement, the plaintiff's unvested shares of stock do not represent compensation earned but not yet paid).  Plaintiff worked under and reaped the benefits of the mutually agreed upon Compensation Plans during his 19 years of employment at CA.  The Court cannot rewrite this contract for Plaintiff, which it essentially did through its instruction to the jury and verdict form.

Even assuming a contract, as written, may be so unreasonable or unconscionable as to violate public policy, Plaintiff did not state such a claim in his complaint, nor did he pursue this claim at trial. The covenant does not apply "where the defendant has exercised an express contractual power in good faith – that is, in a manner that comports with the parties' reasonable expectations as to performance." Speakman v. Allmerica Fin. Life Ins. & Annuity Co., 367 F. Supp. 2d 122, 132 (D. Mass. 2005). There was no dispute at trial that CA "exercised an express contractual power," namely, the Compensation Plan's provision that an employee who is terminated does not earn a commission unless and until the customer pays its invoice within 30 days. Further, the jury expressly found that CA did **not** act in bad faith. Accordingly, CA exercised that power in good faith. Plaintiff did not argue that CA did anything after it terminated his employment to interfere with National Grid's payment of its invoice. Thus, unlike the employers in Fortune and its progeny, there is no evidence that CA acted to prevent Plaintiff from collecting commissions either by terminating his employment or afterwards. Indeed, whether or not and when National Grid paid its invoice was completely out of CA's control. Given the utter absence of evidence that CA did anything other than follow the terms of its Compensation Plan in good faith, no reasonable jury could have found a breach of the covenant of good faith and fair dealing of that Plan as written and as agreed upon by the parties.

**II.     CA Is Entitled To A New Trial.**

Should the Court determine that CA is not entitled to judgment as a matter of law, CA submits that the Court's erroneous instructions regarding the elements of a claim for breach of the covenant of good faith and fair dealing require a new trial. The Court is empowered to grant such a motion when there has been manifest error of law or fact or when a judgment is against the weight of the evidence. Velazquez v. Figueroa-Gomez, 996 F.2d 425, 427 (1st Cir.), cert.

denied, 114 S. Ct. 553 (1993).  For the reasons discussed above, the Court should grant CA's motion for a new trial.

## CONCLUSION

For the foregoing reasons, Defendant CA respectfully requests that this Court grant its motion for judgment as a matter of law or, in the alternative, for a new trial.

Respectfully submitted,

DEFENDANT,

COMPUTER ASSOCIATES
INTERNATIONAL, INC.,

By its attorneys,

/s/ Brigitte Duffy
Brigitte M. Duffy (BBO # 565724)
bduffy@seyfarth.com
Jennifer A. Serafyn (BBO # 653739)
jserafyn@seyfarth.com
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Facsimile:     (617) 946-4801

Date:  February 2, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper will be sent to those indicated as not registered participants on February 2, 2006.

/s/ Brigitte Duffy