**Exhibit B**

Service: **Get by LEXSEE®**
Citation: **143 F.3d 1081**

*143 F.3d 1081, \*; 1998 U.S. App. LEXIS 9469, \*\*;*
*136 Lab. Cas. (CCH) P58,435*

Edward J. Mullowney, Plaintiff-Appellant, v. Data General Corporation, Defendant-Appellee.

No. 97-3350

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

143 F.3d 1081; 1998 U.S. App. LEXIS 9469; 136 Lab. Cas. (CCH) P58,435

April 6, 1998, Argued
May 12, 1998, Decided

**PRIOR HISTORY:** [\*\*1] Appeal from the United States District Court for the Central District of Illinois. No. 96-CV-01453. Joe Billy McDade, Judge.

**DISPOSITION:** Affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant sought review of a decision of the United States District Court for the Central District of Illinois, which granted summary judgment to appellee corporation in a breach of contract action seeking a right to commissions on the sales of computer equipment.

**OVERVIEW:** Appellant sold computer equipment for appellee corporation on a commission basis. Appellee exercised its right to terminate appellant without cause upon 30 days notice. A few months after the termination, appellee sold approximately $ 3 million in computer equipment to appellant's primary client. Appellant claimed a right to commissions on the sales and filed a breach of contract action, contending that appellee violated both the express terms of their contract and an implied covenant of good faith and fair dealing under Massachusetts law. The district court granted summary judgment to appellee. The court affirmed, holding that the relevant sales were invoiced and shipped well after appellant's termination became effective. Massachusetts courts found violations of the implied duty of good faith only when there was some allegation of bad faith on the part of the defendant.

**OUTCOME:** The court affirmed the summary judgment grant to appellee corporation, holding that Massachusetts courts found violations of the implied duty of good faith only when there was some allegation of bad faith on the defendant's part. The relevant sales were invoiced well after appellant's termination.

**CORE TERMS:** termination, effective, invoiced, shipped, duty, primarily responsible, computer equipment, summary judgment, terminate, fair dealing, bad-faith, primary responsibility, breach of contract, customer, notice of termination, terminated, deliveries, implied covenant, effective date, somehow

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Contracts Law > Contract Interpretation > Interpretation Generally

*HN1* It is a fundamental tenet of contract law that the courts do not ascertain the meaning of

contractual provisions in a vacuum.  More Like This Headnote

Contracts Law > Contract Interpretation > Good Faith & Fair Dealing

HN2 Massachusetts courts find violations of the implied duty of good faith only when there is some allegation of bad faith on the part of the defendant.  More Like This Headnote

**COUNSEL:** For EDWARD J. MULLOWNEY, Plaintiff - Appellant: Nile J. Williamson, Peoria, IL USA.

For DATA GENERAL CORPORATION, Defendant - Appellee: Kathryn A. Mrkonich, LITTLER & MENDELSON, Chicago, IL USA.

**JUDGES:** Before Flaum, Rovner, and Diane P. Wood, Circuit Judges.

**OPINIONBY:** FLAUM

**OPINION:** [*1082] Flaum, *Circuit Judge.* Edward Mullowney sold computer equipment for Data General Corporation on a commission basis. On July 17, 1996, Data General exercised its right to terminate Mullowney without cause upon 30 days notice. A few months after this termination, Data General sold approximately $ 3 million in computer equipment to Mullowney's primary client, State Farm Insurance Company. Mullowney claimed a right to commissions on these sales and filed this breach of contract action alleging that Data General violated both the express terms of their contract and an implied covenant of good faith and fair dealing under Massachusetts law. n1 The district court granted summary judgment to Data General, and we affirm.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Paragraph 15A of the parties' agreement specified that the contract was to be construed "in accordance with and governed by the laws of the Commonwealth of Massachusetts".

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - [**2]

Mullowney worked as an independent service representative (ISR) for Data General, and the corporation paid him commissions ranging from 2-10% on each piece of computer equipment that he sold. The parties' contract identified only one customer for which Mullowney would be responsible: State Farm Insurance Company located in Bloomington, Illinois. The contract provided for termination with or without cause upon a 30-day written notice, and Data General exercised its option to terminate its relationship with Mullowney without cause on July 17, 1996 (effective August 16, 1996). n2 In October 1996, over two months after Mullowney's termination became effective, State Farm initiated the bidding and negotiation process to purchase approximately $ 3 million in computer equipment from Data General. Mullowney claims that he was responsible for these sales and therefore deserves commissions.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Although Data General exercised its option to terminate Mullowney without cause, the record on summary judgment reveals that the termination was actually occasioned by State Farm's displeasure with Mullowney's services.

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - [**3]

Mullowney bases his claim on Paragraph 5C of the parties' contract. This provision states that "ISR commissions shall be earned by ISR under this Agreement if ISR was primarily responsible for the customer placing [*1083] its purchase order directly with DGC. 'Primarily responsible' means that ISR's sales efforts were the significant factor in securing the sale." Read in isolation, we might be inclined to agree that Mullowney had presented a triable issue on the question of primary responsibility.

HN1 It is a fundamental tenet of contract law, however, that we do not ascertain the meaning of contractual provisions in such a vacuum. See, e.g., Polaroid Corp. v. Rollins Envtl. Servs. (NJ), Inc., 416 Mass. 684, 624 N.E.2d 959, 963 (Mass. 1993). In two subsequent provisions of the contract, the parties expressly limit the scope of Paragraph 5C. In addition to the requirement of "primary responsibility" from Paragraph 5C, Paragraph 5E states that Mullowney could only earn commissions on those products for which (1) Data General had received "payment in full [from] the customer for that invoice", and (2) Mullowney had submitted a completed commission request form. As an additional qualification, [**4] Paragraph 13C(3) authorizes commissions only if "the Product is invoiced/shipped on or before the effective termination date of this Agreement."

Under our *de novo* review of the district court's grant of summary judgment, see Carter v. American Oil Co., 139 F.3d 1158, 1998 U.S. App. LEXIS 5995, slip op. at 5 (7th Cir. 1998), we agree that Data General is entitled to judgment as a matter of law on Mullowney's breach of contract claims. See Fed. R. Civ. P. 56(c). First, on his claim of an express breach, it is important to note at the outset that it was not enough under the parties' agreement that Mullowney be "primarily responsible" for the post-termination sales. Paragraphs 5C and 13C(3) represent a solution to a problem inherent in commission sales arrangements. At the time an ISR receives a notice of termination, he or she may have a number of deals at various stages of development. Some of these sales might be completed after the ISR's termination becomes effective, and disputes might easily arise about whether the ISR was primarily responsible for some of these deals. The contract between Mullowney and Data General in this case pre-empts these disputes by stating explicitly that an ISR will only receive [**5] commissions for those sales that are invoiced or shipped within 30 days of the notice of termination. In other words, primary responsibility is a necessary, but not a sufficient, condition for a commission under the parties' contract.

By entering into this contract, Mullowney agreed that Data General could terminate him without cause and that he would thereafter only be entitled to commissions on those sales invoiced or shipped before his termination became effective. There was certainly a risk that, under this framework, he could lose commissions on some sales for which he may have been primarily responsible. This was the bargain he made, however, and he cannot now mine ambiguity from a crystal-clear contract or be heard to complain because Data General adhered to this arrangement. Mullowney does not dispute that the relevant sales in this case were invoiced and shipped well after his termination became effective. n3 His express breach of contract claim, therefore, must fail.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Data General's District Manager, Peter Geer, stated under oath that the company had not received any bids from State Farm on the effective date of Mullowney's termination. The bidding process always precedes invoicing and shipping, so it is not possible--and Mullowney does not dispute this point--that computer systems could have been shipped or invoiced before the termination became effective.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**6]

Second, Mullowney argues that the implied duty of good faith and fair dealing should preclude Data General from benefitting from his efforts. He attempts to support his position by citing

Massachusetts cases that have implied a contractual duty to pay commissions for past work. *See, e.g., Maddaloni v. Western Massachusetts Bus Lines, Inc.*, 386 Mass. 877, 438 N.E.2d 351 (Mass. 1982); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (Mass. 1977). Perhaps it is axiomatic, but HN2 Massachusetts courts find violations of the implied duty of good faith only when there is some allegation of bad faith on the part of the defendant. *See, e.g., King v. Driscoll*, 424 Mass. 1, 673 N.E.2d 859, 863 (Mass. 1996); *Blank v. Chelmsford OB/GYN, P.C.*, 420 Mass. 404, 649 N.E.2d 1102, 1105 (Mass. 1995); *McCone v. New England Tel. & Tel. Co.*, 393 Mass. 231, 471 N.E.2d 47, 49-50 (Mass. 1984); see also *Sargent v. Tenaska,* [*1084] *Inc.*, 108 F.3d 5, 7, 8 (1st Cir. 1997) (interpreting Massachusetts law to require that "one condition [of the implied duty of good faith] is that the discharge have been done in bad faith"). The courts in those and other cases imposed on the employers an implied duty not [**7] to terminate an employee in a bad-faith effort to deprive him of commissions for which--in the parlance of this case--he was primarily responsible. Data General, in contrast to those employers, did not act in bad faith solely by refusing to pay commissions on sales invoiced or shipped after his termination in accordance with the terms of its agreement with Mullowney. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 This Court has confronted a similar issue in the context of Illinois law. In *Industrial Representatives, Inc. v. CP Clare Corporation*, 74 F.3d 128 (7th Cir. 1996), a sales representative alleged that a manufacturer terminated their contract in violation of an implied covenant of good faith and fair dealing in an effort to avoid paying commissions to the representative. A provision of the contract, however, stated that representatives were entitled to full commissions on all deliveries within 90 days of their termination. *Id. at 131.* We rejected the representative's claim for commissions on deliveries occurring more than 90 days after his termination: "[The representative] knew, or should have recognized, that the 90-day period created a risk; and it could have responded by demanding a higher commission rate to compensate." *Id. at 132.* We realize that *Industrial Representatives* is not controlling authority in a case involving Massachusetts law, but we find its reasoning persuasive in this case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**8]

With that route foreclosed by the contract's express provisions, Mullowney would seem to have only one potential avenue of success. While the contract in this case allows termination without cause and imposes a time limit on commission eligibility, those provisions alone would not absolve Data General of bad-faith behavior in its enforcement of those terms. For instance, Mullowney might have attempted to show that Data General violated its implied duty of good faith and fair dealing by somehow interfering with his ability to secure commissions during the time between the notice and the effective date of his termination. Merely asserting this sort of bad faith would not be enough to avoid summary judgment, but this avenue of recovery was open to him with proper proof.

Mullowney, however, does not allege that Data General ever intentionally hindered his ability to reap commissions during the 30 days before his termination became effective. Rather, Data General offered uncontroverted evidence that it terminated Mullowney--even though it used the "without cause" termination provision--in response to State Farm's dissatisfaction with his performance. Mullowney does not directly dispute [**9] this reason for his termination, but rather hopes to arouse some suspicion regarding Data General's motives from the mere fact of his termination coupled with the fact that State Farm later purchased computer equipment from Data General. This approach, however, is ineffective for two reasons. First, if anything, it serves only to advance Data General's point: Mullowney was hindering sales to State Farm and the best way for Data General to prosper was to terminate him. Second, Mullowney's litigation strategy fails to address whether Data General barred Mullowney in bad faith from exercising his rights under the contract; instead, he makes the misdirected claim that Data General's exercise of its rights under the contract somehow violates the implied duty of good faith. We therefore agree with the district court that Mullowney

failed to create a genuine issue of material fact regarding Data General's alleged bad-faith termination.

We affirm the district court's grant of summary judgment to Data General.

---

Service: **Get by LEXSEE®**
Citation: **143 F.3d 1081**
View: Full
Date/Time: Thursday, February 2, 2006 - 9:48 AM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

 About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.