```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


_____
                                   )
JOHN P. BOHNE,                     )
      Plaintiff,                   )
                                   )
   v.                              )   CIVIL ACTION
                                   )   NO. 04-10068-WGY
COMPUTER ASSOCIATES                )
INTERNATIONAL, INC.,               )
      Defendant.                   )
_____)
```

MEMORANDUM

YOUNG, D.J.                                        August 22, 2006

## I.   INTRODUCTION

On January 17, 2006, trial commenced in this action on the sole remaining count of the complaint, Count Four: Breach of Contract - Covenant of Good Faith and Fair Dealing. See Compl. [Doc. No. 1] ¶ 31; Order of October 18, 2005 [Doc. No. 48] at 1. On January 19, 2006, the jury returned a verdict in favor of the plaintiff John P. Bohne ("Bohne") and assessed damages in the amount of $86,689.16. See Jury Verdict [Doc. No. 67]. The defendant Computer Associates International, Inc. ("Computer Associates") filed a Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial ("Def. Mot."), [Doc. No. 69], and a supporting memorandum ("Def. Mem."), [Doc. No. 70], on February 2, 2006. Bohne filed his response to this

motion on February 8, 2006. [Doc. No. 72]. The Court denied Computer Associates' motion on March 2, 2006[1], and now writes to explain this ruling.

## II. BACKGROUND

Evidence was introduced at trial showing that Computer Associates did not pay commission to Bohne for a deal he executed because the client, National Grid, had failed to submit payment to Computer Associates within 30 days of Bohne's termination from the company and also had failed to submit a customer satisfaction letter. Trial Tr., Jan. 18, 2006 [Doc. No. 83] ("Trial Tr. 2") at 116-17. The evidence further showed that Computer Associates acted pursuant to a provision of its compensation plan which required the denial of commission payments to terminated employees on transactions unless a client completes payment within 30 days of termination.[2] Trial Tr., Jan. 17, 2006 [Doc.

---

[1] The resolution of this motion involves a quintessential question of Massachusetts law. The Court offered Bohne the option of certifying the question to the Massachusetts Supreme Judicial Court pursuant to its Rule 1:03, but Bohne declined. See Post-Trial Mot. Hr'g, Mar. 2, 2006 [Doc. No. 86] at 6-9.

[2] The Compensation plan provided:
No Commission will be paid if the same shall not have been earned and otherwise become payable (as defined in the Sales plan) prior to termination with respect to a fully complete transaction. A "fully complete transaction" means that all of the conditions of a sale have occurred as described in this Sales Plan. The sole exception is that a Commission will be paid on an "incomplete" transaction if the only open condition is

No. 82] ("Trial Tr. 1") at 101-102; Compensation Plan ¶ 10.  In contrast, continuing employees receiving a commission were allowed a 90-day window for receipt of client payments before that commission was reversed in the system.  <u>See</u> Trial Tr. 2 at 148:6-14; 160:3-18.[3]  The Compensation plan also required a holdback of 20% of the sales commission for large transactions if the customer satisfaction letter was not completed by the client. Trial Tr. 1 at 125; Trial Tr. 2 at 110-111.

The Court instructed the jury regarding the two potential theories of liability as follows:

> The law is this.  That if an employer, in this case, Computer Associates, acts in bad faith to deprive an employee, in this case, Mr. Bohne, of compensation clearly connected to work already performed[,] the employer has to pay over that compensation . . . .
> . . . .  So what Mr. Bohne must prove is that some person or persons within Computer Associates acted in bad faith under sub a [on the jury verdict form].
> Now here's what that means.  That means that that person or persons recognized that Computer Associates was going to have to pay him a commission on a deal. And they didn't want to pay that commission and so they did something to make it come about that that commission would not be paid.
> Now, if that's why they acted, a person or more than one person, if that's why people in Computer Associates acted, if the reason they behaved as they

---

[Computer Associates'] receipt of payment and that payment is actually received by [Computer Associates] within 30 calendar days following the employee's termination or resignation.
Trial Ex. 4, Fiscal Year 2003 Sales Compensation Plan ("Compensation Plan") ¶ 10; Trial Tr. 1 at 102.

[3]  National Grid submitted its payment within the 90 day window.  Trial Tr. 2 at 148:15-19.

> did was to get out from under paying a commission that he had already earned, that's bad faith. And if he proves that's more likely what happened than not[,] he's entitled to the commission.
> 
> But apart from that, let's say that everybody in Computer Associates, they just followed their normal procedures. Well, one of the things you're going to be asked, and now I'm talking about sub b [on the jury verdict form], is whether those procedures themselves amounted to bad faith . . . .
> 
>       . . . .
> 
> So are you asked whether you think what happened here was fair? No. You're not asked that. Because Computer Associates has the right to set its company up to run its company the way it sees fit. However, if its procedures are so unfair that you, the members of this jury, unanimously come to believe that the procedures are so unfair as to violate the general covenant of good faith and fair dealing, then you, you may in essence void those procedures as functionally constituting bad faith and award whatever should be awarded.

Trial Tr., Jan. 19, 2006 [Doc. No. 84] ("Trial Tr. 3") at 11-14.

The Court further instructed the jury as to "sub b", the procedures prong, as follows:

> Suppose, knowing what the law is, a company sets up a contract and says, well, you work for us and you know, if we let you go, we're not, we're not going to pay you any of the commissions on deals that you put together while you work for us.
> 
> Now the contract might say that. The contract might be perfectly clear on that. And both sides may have signed that. But you see the law says whatever they contract they've got to pay the commissions which in fact were earned. So if it just flat out said, well, we won't do it, you can't get around the law.
> 
> Well, let's say -- and no one suggests there's anything like this in the case -- you had a contract and the contract said, well, you work and, you know, if we let you go we'll flip a coin, and if you, if it comes up heads we'll pay and if it comes up [tails] we won't. You could write a contract that says all that. And there might be gambling types who would go for

>       that.  But that's not the public policy of the
>  Commonwealth of Massachusetts.  You can't do that.
>       . . . .
>       The other issue is this business about the
>  customer satisfaction letter.  Is that, is that a
>  business judgement?  Is that a business call?  Is that
>  something that makes sense that really furthers the
>  business?  Or, as Mr. Bohne is going to argue to you,
>  is that just a technicality.
>       Now, of course if they just threw it in there and
>  they had in mind, well, we'll throw this in there and
>  that way we don't have to pay him the commission, well,
>  then that's under a, that's bad faith.  But even if
>  that was their standard practice, is that such a
>  technicality that you think it's so unfair as to
>  violate the covenant of good faith and fair dealing.
>  That we leave to you.  You make that judgment.

<u>Id.</u> at 17-18.

The jury found that Computer Associates' procedures violated the covenant of good faith and fair dealing, but did not find that Computer Associates had acted in bad faith.  <u>See</u> Jury Verdict.  Computer Associates argued that the jury improperly returned a verdict in favor of Bohne because the jury had found that the company did not act in bad faith; it argued that the Court improperly instructed the jury about the law when it stated that Computer Associates' procedures themselves could violate the covenant of good faith and fair dealing.  <u>See</u> Def. Mem. at 3-9.

**III. DISCUSSION**

The Court's instruction to the jury is premised on the following: 1) that the covenant of good faith and fair dealing may override provisions of a contract relating to the deprivation

of a terminated employee's compensation for past services, and 2) that a termination made pursuant to "bad faith" procedures is a violation of the implied covenant.

### A.  The Implied Duty Of Good Faith Can Override Express Terms Of The Compensation Plan

The implied duty of good faith and fair dealing is recognized by some as "an indispensable measure of 'contractual morality.'"  Tory A. Weigand, The Duty of Good Faith and Fair Dealing in Commercial Contracts in Massachusetts, 88 Mass. L. Rev. 174, 174 (2004).  "The implied covenant of good faith and fair dealing is an example of a common law application of public policy to contract law."  Harper v. Healthsource N.H., 674 A.2d 962, 965 (N.H. 1996).  "The obligation is to preserve the spirit of the bargain rather than the form . . . ."  Christensen v. Kingston School Comm., 360 F. Supp. 2d 212, 225 (D. Mass. 2005) (alterations and internal quotation marks omitted) (quoting Corbin on Contracts, § 654A(A), Kaufmann supp. (1984)).

Several courts have articulated a general rule that the obligation of good faith cannot be employed, when interpreting a contract, to override express contract terms."  See, e.g., General Aviation, Inc. v. Cessna Aircraft Co., 915 F.2d 1038, 1041-42 (6th Cir. 1990) (holding that, under Michigan law, the implied duty of good faith cannot override express contract terms); Grand Light & Supply Co. v. Honeywell, Inc., 771 F.2d

672, 679 (2d Cir. 1985) (applying Connecticut law to the U.C.C.'s good faith provision); <u>Corenswet, Inc.</u> v. <u>Amana Refrigeration, Inc.</u>, 594 F.2d 129, 136-39 (5th Cir. 1979) (holding that, under Iowa law, the U.C.C.'s good faith provision could not be invoked to override or strike a specific clause in a franchise agreement permitting termination "at any time for any reason" upon 10-days' notice); <u>Neuman</u> v. <u>Pike</u>, 591 F.2d 191, 194 (2d Cir. 1979) ("It is . . . well established in New York that, where the expressed intention of contracting parties is clear, a contrary intent will not be created by implication.").[4]

Other courts have, however, implied a covenant of good faith to override express contract terms, "'mainly . . . in contractual relations which involve a special element of reliance such as that found in partnership, insurance, and franchise agreements . . . [or] where one party has traditionally held vastly superior bargaining power - the termination of a salesperson's "at will"

---

[4] Many courts have eroded this proscription by invoking the implied duty of good faith to add terms or restrictions to a party's contractual rights that were not originally in the contract itself. See, e.g., <u>Vylene Enters., Inc.</u> v. <u>Naugles, Inc.</u> (<u>In re Vylene Enters.</u>), 90 F.3d 1472, 1477 (9th Cir. 1996) (holding that the implied duty of good faith was breached where the franchisor opened a competing restaurant within a mile and a half of the plaintiff's restaurant, even though the franchise agreement did not grant the franchisee a right to an exclusive territory); <u>see also</u> David Charney, <u>Nonlegal Sanctions in Commercial Relationships</u>, 104 Harv. L. Rev. 373, 461 (1990) ("[C]ourts use the duty of good faith as a rubric for adding legally enforceable implied terms to an express contract even when the parties made no explicit commitment at all.").

employment contract.'"  Triangle Mining Co. v. Stauffer Chem. Co., 753 F.2d 734, (9th Cir. 1985) (alterations in original) (quoting Aluevich v. Harah's, 660 P.2d 986, 987 (Nev. 1983)). These courts have reasoned that contract terms which are contrary to public policy or result in arbitrary action violate the implied duty of good faith.  See Harper, 674 A.2d at 965, 966 (applying the obligation of good faith to a "termination without cause" provision in a contract between a health maintenance organization and a physician stating that the court "will not enforce a contract or contract term that contravenes public policy"); Overhead Door Co. v. Overhead Door Corp., 734 P.2d 1233, 1235 (Nev. 1987) (holding that "[a]n implied covenant forbids arbitrary action by one party that disadvantages another", Resource Mgmt. Co. v. Western Ranch, 702 P.2d 1028, 1037 (Utah 1985), and ruling that a franchisor's refusal to repurchase any of the franchisee's unsold inventory after terminating the franchise agreement violated the implied duty of good faith, even though the distributor agreement gave the franchisor the option to purchase all, none, or part of the unsold inventory upon termination).

    Massachusetts courts, as well as courts in other states, have applied the duty of good faith to override a range of express termination clauses.  See Fortune v. National Cash Register Co., 373 Mass. 96, 101-02 (1977) (applying the covenant

of good faith to override an express termination-at-will clause in an employment contract where termination was made in bad faith)[5]; see also K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 759-60 (6th Cir. 1985) (ruling that the obligation of good faith imposed a duty on the defendant to give a period of notice to K.M.C. before refusing to advance funds under the loan agreement, as was defendant's right under the agreement); Rao v. Rao, 718 F.2d 219, 222-23 (7th Cir. 1983) (ruling that, under Illinois law, a restrictive covenant is not enforceable pursuant to the implied promise of good faith when an employee is terminated in bad faith and without good cause); Randolph v. New England Mut. Life Ins. Co., 526 F.2d 1383, 1386-87 (6th Cir. 1975) (concluding that, under Ohio law, an insurance company could not terminate in bad faith a general agency contract with one of its agents); deTreville v. Outboard Marine Corp., 439 F.2d 1099, 1100 (4th Cir. 1971) (applying South Carolina law to allow a claim for arbitrary termination of a franchise agreement where agreement contained a clause allowing termination upon thirty-days' notice); Shell Oil Co. v. Marinello, 307 A.2d 598, 600 (N.J. 1973) (holding that the implicit duty of fair dealing precluded

---

[5] The application of the implied covenant of good faith to the common law employment-at-will relationship restricts a well-recognized right of employers to discharge an employee at any time with or without cause or notice. See, e.g., Merrill v. Crothall-Am., Inc., 606 A.2d 96, 101 (Del. 1992); Dare v. Montana Petroleum Mktg. Co., 687 P.2d 1015, 1020 (Mont. 1984); Monge v. Beebe Rubber Co., 316 A.2d 549, 551 (N.H. 1974).

9

arbitrary termination even though the franchise agreement provided for termination without cause, because of the franchisor's "grossly disproportionate bargaining power"). The Fourth Circuit has noted:

> It is settled law in [South Carolina] that regardless of broad unilateral termination powers, the party who terminates a contract commits an actionable wrong if the manner of termination is contrary to equity and good conscience. That standard of conduct is far more stringent than one forbidding only actual fraud, and it may apply to an unconscionable reason for termination as well as to the causing of needless injury in the course of termination.

deTreville, 439 F.2d at 1100 (citations and footnote omitted).

A logical interpretation of Fortune thus allows for the overriding of contract provisions governing the manner of termination when those provisions operate in a way that is contrary to the covenant of good faith and fair dealing. See Fortune, 373 Mass. at 104-05. In Fortune, the Supreme Judicial Court held that the covenant was violated when an employee was terminated for the purpose of depriving him of compensation connected to work already performed. Fortune, 373 Mass. at 104-05. This Court based its instructions to the jury on a logical extension of Fortune, allowing the overriding of contract provisions not only which operate to violate the covenant in certain circumstances, but also those provisions which, on their face, directly conflict with the covenant of good faith and fair

dealing.[6]  For example, a contractual provision stating that an employer can terminate a salesperson the day after receipt of his highest grossing sale for the sole purpose of avoiding payment of commission to the salesperson for that sale could be overridden, pursuant to Fortune, as contrary to the covenant of good faith and fair dealing.

In Gram v. Liberty Mutual Insurance Company, the Supreme Judicial Court extended an employer's obligation of good faith to require "that the employer be liable for the loss of compensation that is so clearly related to an employee's past service, when the employee is discharged without good cause[,]" regardless of whether the employee was terminated for the purpose of depriving him of said compensation.  384 Mass. 659, 672 (1981).[7]  As

---

[6] "At a very minimum, an at-will employment relationship encompasses an agreement by the employee to perform specified work and an agreement by the employer to pay for the work performed." Gasior v. Massachusetts Gen. Hosp., 446 Mass. 645, 651 n.7 (2006).

[7] In Gram, the Supreme Judicial Court noted:
Although there is no evidence warranting an inference that Liberty discharged Gram for the purpose of appropriating his renewal commissions, the fact remains that Gram lost reasonably ascertainable future compensation based on his past services.
. . . . Gram's contribution to Liberty's future income was not tenuous.  Liberty benefitted from its discharge of Gram without cause . . . .  In such a case, Liberty's absence of good faith need not be proved to the extent that there must be a showing of an improper motive for the discharge.  Fair dealing, the other aspect of the obligation imposed on an employer, requires recognition of the agreed worth of such an employee's past service.

discussed infra, the jury was warranted in finding that Computer Associates' compensation procedures were in direct conflict with the covenant of good faith and fair dealing as articulated in Gram, thereby allowing the Court to override such procedures and impose liability on Computer Associates for the compensation that Bohne was deprived.

### B. Bad Faith

In arguing for a judgment as matter of law, Computer Associates incorrectly assumed that because the jury found that the company did not act in bad faith by terminating Bohne, the jury entered an verdict in Bohne's favor absent a finding of bad faith on the part of Computer Associates. See Def. Mem. at 3, 5. Based on the evidence, the jury properly could have concluded that Computer Associates' compensation system operated so as improperly to deprive a terminated employee of compensation for past services by imposing a short, 30-day time limit on the submission of client payments for that employee to be compensated, while at the same time allowing an ongoing employee a 90-day time limit for the same purpose. Though not necessary for a finding of bad faith under Gram, the jury could have concluded, based on the differential treatment of terminated and ongoing employees, that Computer Associates' procedures were

---

Gram, 384 Mass. at 671-72.

purposely designed so as to prevent terminated employees from receiving compensation for past services.  Under either factual conclusion, a finding of bad faith under Gram is supported, and Computer Associates' arguments to the contrary must be rejected.

**IV. CONCLUSION**

Accordingly, Computer Associates' Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial [Doc. No. 69] was DENIED.

/s/ William G. Young
_____
WILLIAM G. YOUNG
DISTRICT JUDGE