# United States Court of Appeals
## For the First Circuit

No. 06-1745

JOHN P. BOHNE,

Plaintiff, Appellee,

v.

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya and Stahl, Senior Circuit Judges.

Brigitte M. Duffy, Jennifer A. Serafyn and Seyfarth Shaw LLP on brief for appellant.
John P. Bohne on brief pro se.

February 1, 2008

**Per Curiam**. On August 19, 2002, John Bohne was terminated--allegedly for a violation of company rules--from his job as a sales executive for Computer Associates International. That termination formed the basis for a diversity lawsuit, filed by Bohne in the federal district court in Massachusetts, asserting various causes of action--state and federal, common law and statutory--against Computer Associates.

Of these claims, only one survived summary judgment and reached trial: Bohne's argument that he was entitled to a commission on a sale he had arranged prior to his termination. He contended that under Massachusetts law, his at-will employment contract included an "implied covenant of good faith and fair dealing" that entitled him to the commission, even though no commission was due to him under the terms of his contract.

After a three-day trial, the jury returned a verdict for Bohne; the special verdict form revealed that the jury had rejected one, but accepted the other, of the two theories of liability charged by the district judge. The former claim was that the termination had been made in bad faith in order to deprive Bohne of his commission; this is a theory well established under Massachusetts law. Fortune v. Nat'l Cash Register Co., 364 N.E.2d 1251, 1257 (Mass. 1977). But the jury rejected this claim on the merits, presumably because it thought that Bohne had not proved the forbidden motive for his discharge. This is not surprising because

under the terms of the contract, discussed below, firing Bohne would not automatically or necessarily deprive him of commissions for sales already transacted.

The claim that the jury accepted and on which it based the judgment for Bohne was an alternative theory submitted to it by the district judge. This theory permitted the jury to determine that the provision of the contract under which Bohne was denied compensation was itself unlawful. Computer Associates now appeals, arguing that the district judge incorrectly instructed the jury and should have granted its post-trial motion for judgment as a matter of law as to the theory. See Bohne v. Computer Assocs. Int'l, Inc., 445 F. Supp. 2d 177, 184 (D. Mass. 2006). This presents a question of Massachusetts law, which we consider de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); SEC v. Happ, 392 F.3d 12, 19, 28 (1st Cir. 2004).

Under the sales compensation plan that governed Bohne's employment, an employee was contractually entitled to a sales commission so long as, inter alia, payment from the sale was received by Computer Associates within 90 days of coming due;[1] but if the employee was terminated, he would not be owed any commissions on sales for which payment was not received within 30

---

[1] If payment was received between 90 and 180 days after coming due, the employee would receive only half of the otherwise applicable commission; after 180 days, payment of any commission would be in the sole discretion of the management.

days of the termination. The contested jury instruction, delivered over defense objection, asked the jury to determine whether this latter plan provision--pursuant to which Bohne lost the disputed commission--was "so unfair as to violate the general covenant of good faith and fair dealing."

We can find no basis in Massachusetts law for such an instruction. The doctrine of good faith and fair dealing "concerns the manner in which existing contractual duties are performed," Eigerman v. Putnam Invs., Inc., 877 N.E.2d 1258, 1265 (Mass. 2007), not the lawfulness of the agreement itself. It constrains a party's discretion so that "the objectives of the contract [are] realized," but does not "create rights and duties not otherwise provided for." Uno Rests., Inc. v. Boston Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004). Ensuring that a party does not act to undermine the goals of the contract is one thing; holding the contract unlawful on its face is another.

Massachusetts law recognizes other doctrines that concern the enforceability vel non of contractual terms. For example, a judge can make a legal determination that a contract is unconscionable--if "the sum total of the provisions of a contract drive too hard a bargain," Waters v. Min Ltd., 587 N.E.2d 231, 234 (Mass. 1992). Or a contract or contractual provision can be held unlawful because it is found to violate public policy. A.Z. v. B.Z., 725 N.E.2d 1051, 1058 (Mass. 2000).

But under neither doctrine is a <u>jury</u> entitled to determine that a contract is unenforceable because it is unfair. <u>Zapatha</u> v. <u>Dairy Mart, Inc.</u>, 408 N.E.2d 1370, 1375 (Mass. 1980); <u>Green</u> v. <u>Richmond</u>, 337 N.E.2d 691, 695 (Mass. 1975). Allowing a jury to pass on the lawfulness of contractual terms could raise serious problems in assuring the stability and predictability of contractual arrangements. In any event Massachusetts law does not provide for the jury to decide that a contract provision is itself "so unfair as to violate the general covenant of good faith and fair dealing."

Bohne did not ask the district judge to strike down the termination provision as unlawful under established Massachusetts doctrines governing illegality; and it is unlikely that any such argument could succeed on these facts. The Massachusetts Supreme Judicial Court (SJC) has tested for "reasonableness" forfeitures that are triggered when employees go to work for competitors, but only by analogy to non-compete covenants, which have anti-competitive effects not implicated here. See <u>Cheney</u> v. <u>Automatic Sprinkler Corp.</u>, 385 N.E.2d 961, 966 (Mass. 1979); <u>Struck</u> v. <u>Plymouth Mortgage Co.</u>, 605 N.E.2d 296, 298 (Mass. 1993).

In all events under the contractual provisions that applied in this case the termination of an employee for cause did not itself forfeit commissions already earned; it was only if the purchase price remained unpaid for 30 days after the termination

that the commission was cancelled. There were also time limits for those who remained employed, and the difference in treatment is plausibly explained by a desire to close the books on discharged employees. We understand that the district judge considered the theory on which Bohne prevailed to be a logical extension of Fortune, but "[i]f Fortune is to be extended, this is a matter for the Massachusetts courts and not for us." Sargent v. Tenaska, Inc., 108 F.3d 5, 10 (1st Cir. 1997). Accordingly, the only theory on which Bohne prevailed cannot support the judgment, which must therefore be vacated.

To avoid confusion in future cases, we note that Bohne did not seek an instruction based on the Massachusetts SJC's decision in Gram v. Liberty Mut. Ins. Co., 429 N.E.2d 21 (Mass. 1981). Gram extended the Fortune doctrine to require employers who terminate "without good cause"--even though without bad-faith intent--to pay any compensation clearly related to employees' past services, even if not yet contractually due. Id. at 28-29. So (in theory) a lawsuit might fail under Fortune yet succeed under Gram-- e.g., if the employee was fired for a baseless reason--although Massachusetts case law has interpreted "good cause" very liberally in favor of employers, e.g., York v. Zurich Scudder Invs., Inc., 849 N.E.2d 892, 899-900 (Mass. App. Ct. 2006).

But Bohne has waived this potential claim by failing to raise it. That he proceeded pro se might entitle him to some

-6-

lenience in construing arguments that he did make, but we cannot order a new trial on a potential claim that was not raised either in the district court or even on appeal. As it happens, it is far from clear that a claim based on Gram could succeed where (as here) the at-will contract includes an explicit forfeiture clause,[2] and anyway Bohne made no serious attempt at trial to demonstrate that his discharge was without good cause.

The judgment is reversed and the case remanded for entry of judgment in favor of Computer Associates. Each side shall bear its own costs on this appeal.

It is so ordered.

---

[2] The SJC has reserved that question, Gram v. Liberty Mut. Ins. Co., 461 N.E.2d 796, 798 (Mass. 1984), and has emphasized that the good faith covenant "is only as broad as the contract that governs the particular relationship." Ayash v. Dana-Farber Cancer Institute, 822 N.E.2d 667, 684 (Mass. 2005); see also Moriearty et al., 45 Mass. Practice--Employment Law § 3.3, at 166-67 (2003) (noting that parties can arguably bargain around the Gram extension, though presumably not around bad faith proper).

Case 1:04-cv-10068-WGY    Document 92    Filed 02/05/2008    Page 8 of 8